**CERBERUS PARTNERS, L.P., et. al.**

v.

**GADSBY & HANNAH, LLP, Schatz & Schatz, Ribicoff & Kotkin**

v.

**Adam C. Harris and O'Melveny & Myers, LLP.**

No. 2002–196–Appeal.

Supreme Court of Rhode Island.

Dec. 19, 2003.

Matthew F. Medeiros, Providence, for Plaintiffs.

John Tarantino, Melissa M. Horne, Providence, for Defendants.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## O P I N I O N

SUTTELL, Justice.

May Rhode Island courts exercise personal jurisdiction, either specific or general, over an out-of-state law firm on a claim for contribution and indemnity arising out of a legal malpractice action that is governed by the laws of this state?

In this case third-party plaintiffs, Schatz & Schatz, Ribicoff & Kotkin (Schatz) and its former partners, appeal from a judgment of the Superior Court granting third-party defendants', Adam C. Harris (Harris) and O'Melveny & Myers, LLP (O'Melveny), motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Superior Court Rules of Civil Procedure. In his decision, the motion justice said: "This Court does not believe in the disposition of this case that there is a sufficient, continuing pervasive presence in the state of Rhode Island by the third-party defendant law firm. * * * This court does not believe that this matter is close." We agree and accordingly affirm the judgment.

### Facts and Travel

The facts underlying this case are well established from an earlier decision of this Court, and need only be summarized here.

See *Cerberus Partners, L.P. v. Gadsby & Hannah,* 728 A.2d 1057 (R.I.1999) (*Cerberus I*).

"The plaintiffs * * * are all financial institutions that purchased loans given by a group of lenders (collectively, the Lenders) to SLM International, Inc. (SLM). The loans given to SLM and bought by the plaintiffs totaled $134 million. The defendants in [the original action] are two law firms, Gadsby & Hannah (Gadsby) and Schatz & Schatz, Ribicoff & Kotkin, * * * and their current and former partners (collectively, the defendants). The defendants represented the Lenders in the loan transactions with SLM." *Cerberus I,* 728 A.2d at 1057.

"On December 3, 1992, SLM entered into a loan and security agreement with Fleet Credit Corporation (Fleet), which, in addition to being a lender itself, was acting as an agent for all of the Lenders. Gadsby was retained by Fleet as counsel for the transaction with SLM. In 1994, the loan and security agreement was amended to include a business acquisition in New Hampshire by an SLM subsidiary, Masca, USA (Masca). Although Gadsby filed financing statements in New Hampshire with respect to the acquired company's assets and inventory, it did not file a financing statement in New Hampshire with respect to Masca's assets and inventory. Therefore, when Masca moved its inventory from Vermont to New Hampshire, Fleet and the Lenders' security interest in those assets and inventory became unperfected.

"In late 1994, SLM began experiencing financial difficulties. Gadsby was replaced by Schatz as counsel for Fleet and the Lenders. On March 2, 1995, some of SLM's creditors filed petitions against SLM in the bankruptcy courts of Delaware and Canada. Those petitions

were eventually dismissed. However, on October 24, 1995, SLM filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Also on October 24, Masca commenced an action against Fleet to avoid the lien from the Lenders' security interest in Masca's inventory in New Hampshire. That action between Fleet and Masca later settled pursuant to a court-approved settlement agreement.

"After the creditors of SLM commenced bankruptcy proceedings against SLM in March 1995, certain of the Lenders, including Fleet, began selling their SLM loans, including all of their rights and obligations connected with those loans, to other financial institutions. Those financial institutions are the plaintiffs in [the original] action.

"Because the security interest arising from the loans was not perfected in New Hampshire, the plaintiffs were unable to receive the full value of the purchased loans and were forced to settle with SLM for an amount less than the total original value of the loans. The plaintiffs claim that it was Gadsby's negligence that caused their security interests to not be perfected and that Schatz was negligent in not discovering Gadsby's error and failing to notice the defect in the security interest even though they were aware of SLM's financial difficulties and SLM's imminent bankruptcy." *Cerberus I*, 728 A.2d at 1058.

The plaintiffs, as the successors in interest to the original Lenders, brought an action alleging "legal malpractice, negligent representation and omissions, breach of a third-party beneficiary contract, and breach of contract against [the defendants]." *Id.*

In *Cerberus I*, 728 A.2d at 1059, we held that Rhode Island law applies to the legal malpractice action arising from the loan agreements pursuant to the choice of law provisions in those agreements designating Rhode Island law as the controlling law. We further held that the Lenders' malpractice actions against Gadsby and Schatz arising from the original loan transactions were assignable to plaintiffs. *Id.* at 1061.

On or about April 9, 2001, Schatz filed a third-party complaint seeking contribution and indemnification from O'Melveny and Harris, asserting that third-party defendants have "sufficient contacts with the State of Rhode Island as to subject them to the personal jurisdiction of this Court, pursuant to G.L. [1956] § 9–5–33, the Rhode Island Long Arm Statute." O'Melveny & Harris thereupon filed a motion to dismiss the third-party complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2). After reviewing various affidavits and memoranda submitted by the parties, the motion justice in a bench decision granted the motion to dismiss. Judgment was duly entered under Rule 54(b) of the Superior Court Rules of Civil Procedure, and Schatz timely appealed.

### Standard of Review

■ In reviewing a lower court's dismissal of an action for failure to make a *prima facie* showing of personal jurisdiction, we draw the facts from the pleadings and the parties' supplementary filings, taking facts affirmatively alleged by plaintiff as true and viewing disputed facts in the light most advantageous to plaintiff. *Sawtelle v. Farrell*, 70 F.3d 1381, 1385 (1st Cir.1995); *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir.1994). Our review is *de novo. See Zarrella v. Minnesota Mutual Life Insurance Co.*, 824 A.2d 1249, 1256 (R.I.2003) (reviewing attack on subject matter jurisdiction *de novo*).

## Discussion

■ It is well established that to withstand a defendant's Rule 12(b)(2) motion to dismiss a complaint for lack of *in personam* jurisdiction, a plaintiff must allege sufficient facts to make out a *prima facie* case of jurisdiction. *Ben's Marine Sales v. Sleek Craft Boats*, 502 A.2d 808, 809 (R.I.1985). A *prima facie* case of jurisdiction is established when the requirements of Rhode Island's long-arm statute are satisfied. *Id.* General Laws 1956 § 9–5–33(a) provides in part that

> "[e]very foreign corporation, every individual not a resident of this state * * * and every partnership or association, composed of any person or persons not such residents, that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island * * * in every case not contrary to the provisions of the constitution or laws of the United States."

"As interpreted by this Court, § 9–5–33(a) permits the exercise of jurisdiction over nonresident defendants to the fullest extent allowed by the United States Constitution." *Rose v. Firstar Bank*, 819 A.2d 1247, 1250 (R.I.2003) (citing *McKenney v. Kenyon Piece Dye Works, Inc.*, 582 A.2d 107, 108 (R.I.1990)).

■ "To ensure constitutional due process to a nonresident defendant, certain minimum contacts with the forum state are required 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " *Kalooski v. Albert–Frankenthal AG*, 770 A.2d 831, 832–33 (R.I.2001) (per curiam) (quoting *Ben's Marine Sales*, 502 A.2d at 809 and *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The minimum contacts requirement protects defendants from the burden of having to litigate in an inconvenient forum and it ensures that states "do not reach out beyond [their] limits * * * as coequal sovereigns in a federal system." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

■ "Obviously, a determination as to the minimum contacts that will satisfy the requirements of due process will depend upon the facts of each particular case." *Ben's Marine Sales*, 502 A.2d at 810. "The fundamental question here is, thus, whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' " *Bendick v. Picillo*, 525 A.2d 1310, 1312 (R.I.1987) (quoting *Violet v. Picillo*, 613 F.Supp. 1563, 1574 (D.R.I.1985) and *World–Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. 559).

■ The forum court possesses personal jurisdiction over a nonresident defendant when a plaintiff alleges and proves the existence of either general or specific personal jurisdiction. "When its contacts with a state are continuous, purposeful, and systematic, a nonresident defendant will subject itself to the general jurisdiction of that forum's courts with respect to all claims, regardless of whether they relate to or arise out of the nonresident's contacts with the forum." *Rose*, 819 A.2d at 1250 (citing *International Shoe Co.*, 326 U.S. at 318, 66 S.Ct. 154). "Thus, if a nonresident's contacts with a forum are sufficient for general personal jurisdiction to exist, then such a party may be sued in that forum for 'causes of action arising from dealings entirely distinct from those activities.' " *Rose*, 819 A.2d at 1251 (quoting *International Shoe Co.*, 326 U.S. at 318, 66 S.Ct. 154); *see also Casey v. Treasure Island at Mirage*, 745 A.2d 743, 744 (R.I.2000) (per curiam).

When a defendant's contacts with the forum are not sufficient to exercise general jurisdiction, "a court may exercise specific personal jurisdiction over the non-resident defendant if the claim sufficiently relates to or arises from any of a defendant's purposeful contacts with the forum." *Rose*, 819 A.2d at 1251.

### I. Specific Jurisdiction

We first address whether the Court can exercise specific jurisdiction over O'Melveny and Harris. For specific personal jurisdiction to exist, however, the defendant must have performed "some act by which [it] purposefully [availed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Rose*, 819 A.2d at 1251 (quoting *State of Maryland Central Collection Unit v. The Board of Regents For Education of the University of Rhode Island*, 529 A.2d 144, 151 (R.I. 1987) and *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). In determining whether specific jurisdiction exists, the court focuses on "the relationship among the defendant, the forum, and the litigation." *Maryland Central Collection Unit*, 529 A.2d at 151 (citing *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). Proffering proof sufficient to predicate a finding of specific jurisdiction is a far less onerous burden for the plaintiff to carry than that of general jurisdiction. *See Ben's Marine Sales*, 502 A.2d at 812.

Although we recognize that the relationship among the defendant, the forum, and the litigation need not be terribly robust to support exercising jurisdiction, we hold that the transaction from which jurisdiction purportedly arises in this case is insufficient to support the exercise of specific personal jurisdiction. Schatz's assertion of personal jurisdiction is predicated upon O'Melveny's and Harris's attorney-client relationship with its Rhode Island client, and its advising such client about Rhode Island loan agreements, particularly in light of our opinion in *Cerberus I*. Schatz is correct that we held that the legal malpractice action arose out of the original loan agreement and was therefore governed by Rhode Island law. Nevertheless, due process requires that there be at least some act by which O'Melveny and Harris purposely availed themselves of the privilege of conducting activities within Rhode Island thereby invoking the benefit and protection of our laws.

O'Melveny is a large limited liability partnership, whose website purports to provide "worldwide counsel to clients engaged in virtually every kind of business." Its principal office is in Los Angeles and it maintains various branch offices around the world, the closest to Rhode Island being in New York City. Harris is a partner based in the New York office.

O'Melveny and Harris were retained by the Lender group in this case specifically because Schatz represented Fleet in its capacity as agent bank, and other members of the Lender group were becoming "increasingly uncomfortable" relying on Schatz. According to the uncontradicted representations of Harris, O'Melveny was originally retained to represent six of the Lenders as a group, not any individual lender, and specifically "not Fleet."

In connection with its representation of the Lenders, O'Melveny entered an appearance in bankruptcy proceedings in the United States Bankruptcy Court for the District of Delaware. According to Harris's affidavit, upon commencement of the Chapter 11 proceedings, Fleet "consented to become a part of the group of Lenders represented by O'Melveny so that the Lenders, as a group, could act in a unified

fashion through a single law firm with respect to matters arising from or relating to the SLM Chapter 11 case."

Thereafter, O'Melveny sent monthly invoices to Fleet's Providence office for Fleet's pro rata share of fees and expenses. In addition, O'Melveny sent invoices to Fleet in its capacity as agent bank for distribution among all the Lenders.

All work done by O'Melveny and Harris, as well as any advice they may have given with respect to either the loan agreements or bankruptcy proceedings, was transacted outside the state of Rhode Island. Neither Harris nor any other partner or employee of O'Melveny conducted any business with respect to this matter within Rhode Island. The bankruptcy proceedings were in Delaware. Harris and other O'Melveny attorneys attended and conducted meetings in New York and Wilmington, Delaware, and had communications with counsel for other parties, including Fleet, none of whom were located in Rhode Island. Schatz does not assert otherwise.

 We agree with the motion justice that the mere fact that O'Melveny sent bills and invoices into Rhode Island—substantial though they may have been, aggregating in the hundreds of thousands of dollars—is not sufficient to vest specific jurisdiction in this case. No "act" was performed within the state whatsoever by which O'Melveny can be said to have purposefully availed itself of conducting activities here. At most, it might be that O'Melveny would have to look to Rhode Island law to collect Fleet's pro rata share of its fees in the event of nonpayment. Such a scenario simply is too speculative to be construed as purposeful availment. We hold, therefore, that in this case third-party defendant law firm's representation of a Rhode Island client, in which no legal

services were performed within the state other than the mailing of invoices to the client, does not support the exercise of personal jurisdiction. "The mere existence of an attorney-client relationship, unaccompanied by other sufficient contacts with the forum, does not confer personal jurisdiction over the non-resident in the forum state; more is required." *Sawtelle*, 70 F.3d at 1392.

Moreover, O'Melveny was retained to represent the Lender group specifically because the Lender group's interests diverged from those of Fleet. It may be that O'Melveny nominally advised Fleet in Fleet's capacity as a member of the lending group; however, the Lenders solicited O'Melveny to represent them as a whole. O'Melveny did not purposefully reach out to a Rhode Island client to render advice on a Rhode Island contract.

Nor is the exercise of personal jurisdiction warranted by the fact that O'Melveny and Harris were retained to render advice to their clients concerning their rights and obligations under loan agreements clearly governed by Rhode Island law.

 We are mindful that a choice of law provision in a contract should not be ignored when considering whether a party has voluntarily submitted to a forum's jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). But a choice of law provision is merely a factor in the overall equation; it does not end the analysis. "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." *Id.*

We note that the choice of law provision in the loan agreements does not affect the right of Fleet, as agent on behalf of the

Lenders, to bring an action in the courts of any proper jurisdiction. Only the "Borrower" (SLM) is required to submit to the jurisdiction of any court located within Providence County. Therefore, neither Fleet, as agent bank, nor the Lenders collectively bound themselves to litigate all claims in Rhode Island merely because Rhode Island law would apply to the loan agreements or to any action arising therefrom, such as the malpractice claim.

Under these facts, we hold that specific jurisdiction over O'Melveny and Harris does not arise out of the underlying loan agreements. O'Melveny and Harris have not purposefully availed themselves of the privilege of conducting activities within Rhode Island. *See Sawtelle,* 70 F.3d at 1394; *Rose,* 819 A.2d at 1252.

■ As Schatz correctly points out, the "cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability." *Sawtelle,* 70 F.3d at 1391. "[T]he foreseeability that is critical to due process analysis * * * is that the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. 559. Jurisdiction is proper when the contacts proximately result from actions that create a "substantial connection" with the forum state. *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). "Thus where the defendant 'deliberately' * * * has created 'continuing obligations' between himself and residents of the forum, * * * he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger*

*King Corp.,* 471 U.S. at 475–76, 105 S.Ct. 2174.

Here there is no "substantial connection" with Rhode Island. O'Melveny and Harris did not deliberately create "continuing obligations" between themselves and their Rhode Island client. They were retained to represent a group of lenders, not including Fleet. They performed no activity within Rhode Island. The fact that they subsequently provided legal services on behalf of Fleet in connection with a bankruptcy proceeding in Delaware does not subject them to the personal jurisdiction of Rhode Island. The activities of O'Melveny and Harris in this matter are not sufficiently related to Rhode Island to confer jurisdiction.

■ Schatz further contends that this Court should apply the so-called "gestalt factors" to determine whether the exercise of personal jurisdiction is reasonable in this case. These factors include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most effective resolution of the controversy, and the shared interest of the several states in furthering fundamental substantive social policies. *World–Wide Volkswagen Corp.,* 444 U.S. at 292, 100 S.Ct. 559; *Maryland Central Collection Unit,* 529 A.2d at 151. "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King Corp.,* 471 U.S. at 477, 105 S.Ct. 2174.

■ These factors do not even come into play, however, until it has been shown that a defendant has purposefully established minimum contacts with the forum state. Due process requires at least some act by which a defendant purposefully avails itself of the privilege of conducting

activities within the forum state; it is the *sine qua non* of personal jurisdiction. Until such an act is established, the reasonableness of exercising jurisdiction is not even an issue.

■■■ As the motion justice noted, the gestalt factors are employed only when the question of personal jurisdiction is close, and then the balance may be tipped toward exercising personal jurisdiction if the balance of the factors shows that exercise to be reasonable. *See Sawtelle*, 70 F.3d at 1394 ("[W]e note that a failure to demonstrate the necessary minimum contacts eliminates the need even to reach the issue of reasonableness: '[t]he [g]estalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled.'") (quoting *United Electrical Radio & Machine Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1091 n. 11 (1st Cir.1992)); *Maryland Central Collection Unit*, 529 A.2d at 151 ("[O]nce a court determines that a nonresident defendant purposefully established minimum contacts with the foreign forum, the court must consider whether the exercise of jurisdiction would offend fair play and substantial justice."). If plaintiff does not establish the requisite minimum contacts, then the gestalt factors should not be employed.

## II. General Jurisdiction

■■■ Having concluded that there is no basis to exercise specific personal jurisdiction, we must next consider whether Rhode Island can exercise general personal jurisdiction. This forum may not exercise general jurisdiction over a nonresident defendant unless the defendant's "contacts with a state are 'continuous, purposeful, and systematic.'" *Rose*, 819 A.2d at 1250 (citing *International Shoe Co.*, 326 U.S. at 317, 66 S.Ct. 154). Therefore, if O'Melveny and Harris's contacts with Rhode Is-

land are sufficient for general jurisdiction, then they may be sued for activities unrelated to the underlying malpractice action. *See Rose*, 819 A.2d at 1251; *Casey*, 745 A.2d at 744.

O'Melveny is a large, general practice law firm with domestic and international offices. It maintains no office in Rhode Island, neither owns nor leases property here, maintains no records here, has neither an agent, telephone number nor mailbox here, and none of its attorneys is licensed to practice in Rhode Island. O'Melveny does not recruit personnel in Rhode Island. The record indicates that ten O'Melveny attorneys have been admitted to Rhode Island *pro hac vice* in six cases in Rhode Island state courts and the Federal District Court of Rhode Island since 1994. All those appearances were on behalf of 'out-of-state clients. There have been other isolated contacts and communications with Rhode Island parties, including discussions with local experts, providing testimony at a legislative hearing, taking one in-state deposition in an out-of-state case, and communications with in-state attorneys on behalf of out-of-state clients. Neither O'Melveny nor Harris appeared in Rhode Island during its incidental representation of Fleet.

Harris is a resident and domiciliary of New York. He is not admitted to practice law in Rhode Island, has never appeared in a Rhode Island court on a *pro hac vice* basis, and has never engaged in any professional activity in Rhode Island. He avers that his only personal contact with the state in the past twenty years was to attend his brother's wedding in 1989.

On its website, O'Melveny holds itself out to potential clients as having the "proven ability to cooperate seamlessly across the country or around the world." Consistent with this representation, ten different O'Melveny lawyers have been admitted to

state or federal courts in Rhode Island in six different cases over a seven-year span. Thus, Schatz asserts, O'Melveny "can and should 'reasonably anticipate' that it may be 'haled into court' in Rhode Island."

We are not satisfied that these *pro hac vice* appearances constitute such "continuous and systematic" contacts with Rhode Island as to subject the nonresident law firm to our courts' jurisdiction. Nor do they, together with O'Melveny's other sporadic and incidental contacts with Rhode Island, demonstrate a continuous, pervasive presence in the State of Rhode Island. Under Article II, Rule 9 of the Supreme Court Rules, *pro hac vice* appearances may be granted to nonresident attorneys only "upon special and infrequent occasion." We need not reach the question of how many *pro hac vice* appearances by different members of a law firm might be enough to warrant the exercise of general jurisdiction over the law firm itself. Clearly in this case, "continuous and systematic" contacts have not been established. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 418–19, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

▮ Similarly, a law firm website that proclaims the firm's ability to represent clients in all domestic courts does not constitute direct solicitation of potential Rhode Island clients, and should not be construed as a contact for the purposes of our analysis. Even if such advertising were a cognizable contact with the forum, it would not be a sufficient ground on which to exercise personal jurisdiction. *See Russo v. Sea World of Florida, Inc.,*

709 F.Supp. 39, 41–42 (D.R.I.1989) (no personal jurisdiction where out-of-state corporation advertised and sold tickets through travel agents in Rhode Island); *Donatelli v. National Hockey League,* 708 F.Supp. 31, 35 (D.R.I.1989) (televising games, selling merchandise, sending scouts and referees for exhibition games in state insufficient contact for exercise of general jurisdiction over unincorporated association), *rev'd on other grounds,* 893 F.2d 459 (1st Cir.1990); *but see Kim v. Keenan,* 71 F.Supp.2d 1228, 1234 (M.D.Fla.1999) (recognizing that active Internet solicitation is a means for establishing personal jurisdiction).

### Conclusion

As the court below observed, the underlying action was brought by New York plaintiffs against a Massachusetts law firm and a Connecticut law firm, and the third-party defendants are a California law firm and its New York partner. The trial justice asked, "Why in Rhode Island?" We ponder the same question and reach the same conclusion.

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.