[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is Defendants' Stevens-Henager College (SHC) and College America Services, Inc. (CAS) Motion for Summary Judgment pursuant to Rhode Island Rule of Civil Procedure 56.
 Facts and Travel
This is an action for breach of contract and book account.
In the fall of 1999, Stevens-Henager College (SHC), based in Utah, needed to find a new Director of Admissions. Subsequently, the Plaintiff Michael Cobb d/b/a Executive Search Group, an executive headhunter located in Rhode Island, was contacted by Karen Kuentz, after seeing Mr. Cobb's advertisement in a trade magazine. Ms. Kuentz is employed by College America Services (CAS), a Nevada corporation which provides services to colleges in the western United States. After several communications and correspondence between the two, Ms. Kuentz and Mr. Cobb entered into a contract whereby Mr. Cobb would provide candidates for the Director of Admissions opening. In the event that one of these candidates was hired, Mr. Cobb would receive a finder's fee of 25% of the annual salary. The contract indicated that SHC was the client on the face of the contract. Mr. Cobb provided a candidate, who eventually was hired by CAS. Mr. Cobb did not receive the contracted finder's fee and initiated this suit.
CAS and SHC filed motions to dismiss for lack of personal jurisdiction. The Superior Court, Mr. Justice Gagnon presiding, previously denied both motions. Both CAS and SHC have now filed motions for summary judgment based on lack of personal jurisdiction. Plaintiff filed an objection.
 Analysis
A. Parties to the Contract
SHC alleges it never entered into a contract with Mr. Cobb. CAS and SHC have filed affidavits indicating that they are separate entities and that neither entity has an ownership interest in the other. See affidavits of Ms. Kuentz and Vicky Dewsnup. Additionally, SHC avers that CAS did not possess the authority or apparent authority to contract on behalf of SHC. However, the contract which was signed by Ms. Kuentz indicates that SHC is the "client" and further states that "Stevens-Henager College agrees to retain [Mr. Cobb]." Additionally, Mr. Cobb submitted an affidavit indicating that the Utah Board of Education for Private and Proprietary Schools lists CAS as the owner of SHC, and that even though Mr. Cobb was paid by CAS, he was actually working for and on behalf of SHC. The affidavit of Ms. Kuentz states that CAS is a Nevada corporation "that provides services to collegesunder the same ownership." (Emphasis added.) Clearly, there remains sufficient material issues of fact as to whether CAS and SHC were the same entity, or whether SHC and CAS had an ownership relationship, and thus, whether CAS had authority or apparent authority to bind SHC.
B. Personal Jurisdiction
Whether Mr. Cobb can maintain personal jurisdiction over SHC and CSA is not easily discerned. See Phillips Exeter Academyv. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999) ("Although [the jurisdictional] regime is grounded in principles of fundamental fairness, it is written more in shades of grey than in black and white.") Jurisdictionally speaking, each defendant must stand or fall based on its own contacts with the forum. Phillips Exeter Academy, 196 F.3d at 288.
To establish a prima facie case of personal jurisdiction in Rhode Island, Mr. Cobb must satisfy our state's long-arm statute, R.I.G.L. § 9-5-33. Cerberus Partners, L.P. v. Gadsby Hannah,LLP, 836 A.2d 1113, 1118 (R.I. 2003) ("a prima facie case of jurisdiction is established when the requirements of Rhode Island's long-arm statute are satisfied.") Section 9-5-33(a) provides in part that:
 "every foreign corporation, every individual not a resident of this state . . . and every partnership or association, composed of any person or persons not such residents, that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island . . . in every case not contrary to the provisions of the constitution or laws of the United States."
As interpreted by our Supreme Court, § 9-5-33(a) permits the exercise of jurisdiction over nonresident defendants to the fullest extent allowed by the United States Constitution. Rosev. Firstar Bank, 819 A.2d 1247, 1250 (R.I. 2003) (citingMcKenney v. Kenyon Piece Dye Works, Inc., 582 A.2d 107, 108
(R.I. 1990)).
Due process requires at least some act by which a defendant purposefully avails itself of the privilege of conducting activities within the forum state: it is the sine qua non of personal jurisdiction." Cerberus Partners,836 A.2d at 1121-1122. Additionally, a determination as to the minimum contacts that will satisfy the requirements of due process will depend upon the facts of each particular case. Ben's MarineSales v. Sleek Craft Boats, 502 A.2d 808, 810 (R.I. 1985). The court shall make a case-by-case determination in recognition of "developments in communication and transportation [that] have resulted in an increasing nationalization . . . and have increased the need for states to exercise jurisdiction over nonresidents." Nicholson v. Buehler, 612 A.2d 693, 696 (R.I. 1992); Roger Williams General Hospital v. Fall River Trust Co.,423 A.2d 1384, 1386 (R.I. 1981). Thus, the fundamental question is whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." Cerberus Partners, 836 A.2d at 1118.
The forum court possesses personal jurisdiction over a nonresident defendant when a plaintiff alleges and proves the existence of either general or specific personal jurisdiction.
General Jurisdiction.
 When its contacts with a state are continuous, purposeful, and systematic, a nonresident defendant will subject itself to the general jurisdiction of that forum's courts with respect to all claims, regardless of whether they relate to or arise out of the nonresident's contacts with the forum. Thus, if a nonresident's contacts with a forum are sufficient for general personal jurisdiction to exist, then such a party may be sued in that forum for "causes of action arising from dealings entirely distinct from those activities." Cerberus Partners, 836 A.2d at 1118.
Clearly, Mr. Cobb cannot establish general jurisdiction over SHC and CAS and, in fact, Mr. Cobb does not even argue this point.
Specific Jurisdiction. When a defendant's contacts with the forum are not sufficient to exercise general jurisdiction, "a court may exercise specific personal jurisdiction over the nonresident defendant if the claim sufficiently relates to or arises from any of a defendant's purposeful contacts with the forum." Cerberus Partners, 836 A.2d at 1118-1119. For specific personal jurisdiction to exist, however, the defendant must have performed "some act by which [it] purposefully [availed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."Cerberus Partners, 836 A.2d at 1119; Rose v. Firstar Bank,819 A.2d 1247, 1251 (R.I. 2003).
Cerberus Partners explains that the requisite proof sufficient to predicate a finding of specific jurisdiction is a "far less onerous burden for the plaintiff to carry than that of general jurisdiction," and the "relationship among the defendant, the forum, and the litigation need not be terribly robust to support exercising jurisdiction." Cerberus Partners,836 A.2d at 1119.
The First Circuit Court of Appeals and the Rhode Island Supreme Court describe the required inquiry in slightly different terms. The First Circuit describes the required inquiry as:
 "The inquiry into specific jurisdiction lends itself to a tripartite analysis. First, an inquiring court must ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum. Second, the court must ask whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws. Third, if the proponent's case clears the first two hurdles, the court then must analyze the overall reasonableness of an exercise of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction." Phillips Exeter Academy, 196 F.3d at 288.
In the present case, the cause of action clearly arises out of the contract between Mr. Cobb and SHC/CAS. The analysis thus turns on whether the relationship among the defendant, the forum, and the litigation is sufficient to constitute purposeful availment of the benefits and protections afforded by the forum's laws. As our high court has recently instructed:
 "[The] cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability. The foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. Jurisdiction is proper when the contacts proximately result from actions that create a `substantial connection' with the forum state. Thus where the defendant `deliberately' . . . has created `continuing obligations' between himself and residents of the forum, . . . he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by `the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." Cerberus Partners, 836 A.2d at 1121 (internal citations omitted). (Emphasis added.)
Mr. Cobb and SHC/CAS disagree on whether a "single contract" is sufficient to establish the required contacts. The R.I. Supreme Court has interpreted McGee v. International Life InsuranceCo., 355 U.S. 220, 2 L.Ed.2d 223, 78 S.Ct. 199 (1957),[1]
and its progeny for the proposition that "a single act having impact in and connection with the forum state can satisfy the minimum-contact test of International Shoe Co." Ben's MarineSales v. Sleek Craft Boats, 502 A.2d 808, 812 (R.I. 1985);Trustees of the Sheppard and Enoch Pratt Hospital v. Smith,114 R.I. 181, 184, 330 A.2d 804, 806 (1975).
However, the R.I. Supreme Court has cautioned that "[w]hen assaying personal-jurisdiction issues, however, it is important to remember that McGee marks the outer limits of what type of minimum contacts with a forum state will sustain specific personal jurisdiction." Rose v. Firstar Bank, 819 A.2d 1247,1252 (R.I. 2003). Additionally and most important for this Court's analysis, the R.I. Supreme Court has emphasized the fact that McGee involved solicitation. Rose, 819 A.2d at 1255
("Thus, this is not a McGee situation in which a corporation or other entity solicits new business from individuals and others who may live or work in this jurisdiction, and the claim arises out of or relates to that contact with the forum jurisdiction. `Without evidence that the defendant actually reached out to the plaintiff's state of residence to create a relationship — say, by solicitation . . . — the mere fact that the defendant willingly entered into a tendered relationship does not carry the day.'"Rose v. Firstar Bank, 819 A.2d 1247, 1255 (quoting PhillipsExeter Academy, 196 F.3d at 292).
This Court should not focus strictly on the contract at issue. The Rhode Island Supreme Court stressed that the "forum state must consider the cumulative effect of all contacts in their aggregate. Only in this way shall the true quality and nature of the relationship of the defendant, the litigation, and the forum emerge." Nicholson v. Buehler, 612 A.2d 693, 697 (R.I. 1992). In the present case there appears to be more contacts than just the single contract. All parties mention numerous other correspondence and phone calls between the parties — several of which (including the original solicitation) were initiated by CAS/SHC. Additionally, Mr. Cobb has submitted copies of facsimile messages sent over the course of several months to CAS/SHC; all clearly indicating they originated from Rhode Island, regarding potential candidates.
Furthermore, it seems foreseeable to SHC/CAS that they could be hailed into court in Rhode Island based on a breach of this contract. CAS/SHC contacted and "solicited" Mr. Cobb to conduct this search. Mr. Cobb was based in Rhode Island throughout the relationship. All correspondence between the parties flowed to and from Rhode Island and the contract was signed and thus formed in Rhode Island.
Additionally, as the Cerberus Partners Court stated "where the defendant `deliberately' . . . has created `continuing obligations' between himself and residents of the forum, . . . he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by `the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." Cerberus Partners,836 A.2d at 1121. The Defendants deliberately contracted with Mr. Cobb in Rhode Island; there was no unilateral activity by Mr. Cobb which brought Rhode Island into the picture — such as Mr. Cobb moving to Rhode Island after the formation of the contract. Related to this, the Defendants' motivation for entering into the contract was to acquire the benefits of specific services that Mr. Cobb could provide. Clearly, the Defendants' activities in Rhode Island were not random or fortuitous.
Finally, a reading of the contract clearly leads to the conclusion that the parties contemplated a continuing affiliation. The contract states that "Stevens-Henager College agrees to retain Michael Cobb of Executive Search Group to recruit management and executive personnel for their company. Qualifications and requirements for each position will be supplied by the company according to each employment opportunity."
While the Cerberus Partners Court infers that merely being entitled to sue in a Rhode Island court may not subject a party to respond to suit in Rhode Island, see Cerberus Partners,836 A.2d at 1120, the Ben's Marine Court found this point to be of importance in the overall determination of jurisdiction.Ben's Marine, 502 A.2d at 815 ("If plaintiffs had not paid their bill upon delivery, Sleek Craft could have sued in Rhode Island to collect either on the contract or to enforce a judgment obtained in California.") See also, Phillips ExeterAcademy, 196 F.3d at 292 ("Even if a defendant's contacts with the forum are deemed voluntary, the purposeful availment prong of the jurisdictional test investigates whether the defendant benefited from those contacts in a way that made jurisdiction foreseeable.")
Thus, it appears that Mr. Cobb has demonstrated sufficient contacts to establish specific jurisdiction. However, the inquiry does not end there.
Once minimum contacts are established, this Court applies the so-called "Gestalt factors" to determine whether the exercise of personal jurisdiction is reasonable in this case. "These factors do not even come into play, however, until it has been shown that a defendant has purposefully established minimum contacts with the forum state." Cerberus Partners, 836 A.2d at 1121-1122. Until some act by which a defendant purposefully avails itself of the privilege of conducting activities within the forum state is established, the reasonableness of exercising jurisdiction is not even an issue. Id. The Gestalt factors are employed only when the question of personal jurisdiction is close, and then the balance may be tipped toward exercising personal jurisdiction if the balance of the factors shows that exercise to be reasonable.Id. at 1122 (citing Sawtelle v. Farrell, 70 F.3d 1381, 1385
(1st Cir. 1995)).
The Gestalt factors include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most effective resolution of the controversy, and the shared interest of the several states in furthering fundamental substantive social policies. Id. at 1121 (citing World-Wide Volkswagen Corp. v. Woodson,444 U.S. 286, 292, 62 L.Ed.2d 490, 100 S.Ct. 559 (1980)). The R.I. Supreme Court has stated that these "must be compelling if they are to defeat jurisdiction over a defendant with purposeful and clear contacts." State of Md. Cent. Collection Unit v. Board ofRegents, 529 A.2d 144, 151 (R.I. 1987).
An analysis of the Gestalt factors fails to dissuade the court from accepting jurisdiction. The Defendants have had no problem acquiring and retaining counsel to defend this lawsuit. Furthermore, it is much less of a burden to have the Defendants litigate this lawsuit in Rhode Island, as compared to having the Plaintiff litigate this action in Utah or Arizona. Additionally, Rhode Island has an interest in protecting the rights of its residents who do business with out-of-state parties. SeeRose, 819 A.2d at 1253.
In sum, by purposefully contracting for the benefits of services performed in Rhode Island and by negotiating and corresponding with the Plaintiff during the performance of those services, the Defendants transacted business in the state, as contemplated by the long-arm statute, to a sufficient degree to satisfy due process, and thereby trigger the statute's extension of in personam jurisdiction.
 Conclusion
The motions of Stevens-Henager College and College America Services for summary judgment are denied.
[1] In McGee, a Texas corporation, assuming the obligations of an Arizona insurer, mailed a reinsurance certificate to a California policyholder whom the Arizona insurer originally had insured. McGee v. International Life Insurance Co.,355 U.S. 220, 2 LEd.2d 223, 78 S.Ct. 199 (1957). The California policyholder accepted the offer from the Texas insurer to renew its insurance contract and mailed the required premiums from California to the Texas insurer. Id. The United States Supreme Court held that, based on the Texas insurer's purposeful solicitation of this reinsurance business from the California policyholder and the policyholder's acceptance of this offer in California, a California court could exercise jurisdiction over the Texas defendant because "it is sufficient for purposes of due process that the suit was based on a contract which has a substantial connection with [the forum] State." Id. at 223,78 S.Ct. at 201, 2 L.Ed2d at 226.