DECISION
Before this Court are four motions to dismiss for lack of personal jurisdiction pursuant to Super. R. Civ. P. 12(b)(2), submitted by Defendant CARQUEST Corporation ("Carquest"). Carquest contends that it does not have the requisite minimum *Page 2 
contacts with Rhode Island to subject it to personal jurisdiction in this forum. Because the motions contain a common issue, the Court will address them collectively.
 Facts and Travel
Between September 4, 2007 and January 30, 2008, the above-named Plaintiffs filed complaints in Rhode Island Superior Court, alleging personal injuries due to inhalation of asbestos fibers emitted from products designed, manufactured, distributed, and/or sold by various defendants, including Carquest. In their complaints, the Plaintiffs allege that Carquest's liability arises out of products shipped to and used in states other than Rhode Island.
Carquest subsequently filed motions to dismiss pursuant to Sup. R. Civ. P. 12(b)(2), arguing that Plaintiffs' complaints failed to assert facts sufficient to demonstrate a prima facie case for this Court's exercise of personal jurisdiction. In support of its motion to dismiss, Carquest has offered the affidavit of its Vice President, Arthur E. Lottes, III, which asserts the following facts:
 CARQUEST Corporation was incorporated in the state of Delaware in 1974. Its primary place of business and its residence is in Raleigh, North Carolina. It has fewer than ten employees. [It] is not authorized to and has not conducted business in Rhode Island. [It] does not own any property or maintain any office space or other facility in Rhode Island. [It] does not have any employees in Rhode Island. [It] does not have any mailing address or post office box in Rhode Island. [It] does not have any bank accounts in Rhode Island.
In addition, the affidavit provides that Carquest "does not manufacture, sell or distribute any products." Rather, it "negotiates with manufacturers of automotive parts to obtain buying opportunities by which the independent stores that participate in the CARQUEST program can purchase on favorable terms." The affidavit further provides that Carquest *Page 3 
"does not and has not in the past owned any retail stores which use the CARQUEST name."
To contradict statements made in this affidavit, Plaintiffs refer principally to Carquest's own website, which contains the following information:
 There are more than 3,400 CARQUEST Auto Parts Stores located throughout North America.
 . . . With its corporate headquarters in Raleigh, North Carolina, CARQUEST Auto Parts is the premier supplier of replacement products, accessories, supplies and equipment for virtually all makes of automobiles, as well as light and heavy-duty trucks, off-road equipment, buses, recreational vehicles and agricultural equipment. Additionally, we distribute and sell tools, equipment, chemicals, paint and accessories.
 . . . Our CARQUEST-brand products are guaranteed coast-to-coast. Under the program, customers submitting products for a warranty claim that were purchased at a CARQUEST Auto Parts store can have them replaced, free of charge.
The Carquest website reveals that there are ten Carquest Auto Parts stores in the State of Rhode Island, the closest being within two miles of this Court.
 Law and Analysis
"It is well established that to withstand a defendant's Rule 12(b)(2) motion to dismiss a complaint for lack of in personam jurisdiction, a plaintiff must allege sufficient facts to make out a prima facie case of jurisdiction." CerberusPartners, L.P. et al. v. Gadsby Hannah, LLP,836 A.2d 1113, 1118 (R.I. 2003) (citing Ben's Marine Sales v.Sleek Craft Boats, 502 A.2d 808, 809 (R.I. 1985)). For purposes of a prima facie showing, the Court must "examine the pleadings, accept all facts alleged by the plaintiff as true, and view the disputed facts in the light most favorable to the plaintiff."Cassidy v. Longuist Mgmt. Co., 920 A.2d 228, 232 (R.I. 2007). A prima facie case is established *Page 4 
"when the requirements of the Rhode Island long-arm statute are satisfied." Id. Rhode Island's long-arm statute, which governs the State's jurisdiction over nonresident defendants, provides in part that
 [e]very foreign corporation, every individual not a resident of this state and every partnership or association, composed of any person or persons not such residents, that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States. G.L. 1956 § 9-5-33.
As interpreted by our Supreme Court, this statutory language "permits the exercise of jurisdiction over non-resident defendants to the fullest extent permitted by the United States Constitution."Rose v. Firstar Bank, 819 A.2d 1247, 1250 (R.I. 2003). Constitutional due process requires that the Defendant have "minimum contacts" with the forum state, so that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." Cerberus Partners,836 A.2d at 1118 (quoting International ShoeCo. v. Washington, 326 U.S. 310, 316 (1945)). In making this determination, the Court must consider the facts of the particular case, and consider whether, given such facts, the defendant should "reasonably anticipate being haled into court" in that state.Id.
The Rhode Island courts possess personal jurisdiction over a nonresident defendant when a plaintiff alleges and proves either general or specific jurisdiction. Id. "When its contacts with a state are continuous, purposeful, and systematic, a nonresident defendant will subject itself to the general jurisdiction of that forum's courts with respect to all claims, regardless of whether they relate to or arise out of the nonresident's contacts with the forum." Rose, 819 A.2d at 1250 (citingInternational Shoe Co., 326 U.S. at 318). *Page 5 
"Thus, if a nonresident's contacts with a forum are sufficient for general personal jurisdiction to exist, then such a party may be sued in that forum for `causes of action arising from dealings entirely distinct from those activities.'" Id. at 1251.
When a defendant's contacts with the forum are insufficient to exercise general jurisdiction, "a court may exercise specific personal jurisdiction over the nonresident defendant if the claim sufficiently relates to or arises from any of a defendant's purposeful contacts with the forum." Rose, 819 A.2d at 1251. This is accomplished by demonstrating a "relationship among the defendant, the forum, and the litigation." CerberusPartners, 836 A.2d 1119. The relationship need not be "terribly robust," and proof sufficient to find specific jurisdiction "is a far less onerous burden" than that necessary to prove general jurisdiction. Id.
In this case, general, not specific, jurisdictional principles must apply because Plaintiffs' claims do not "arise out of" Carquest's activities in Rhode Island. See Rose,819 A.2d at 1250. Plaintiffs concede this point. It is undisputed that none of the activities that serve as the basis for Plaintiffs' complaints took place in Rhode Island. Thus, Carquest's contacts with Rhode Island must meet the "continuous, purposeful, and systematic" standard to comply with this State's long arm statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.
The two leading United States Supreme Court cases that address the general personal jurisdiction standard are instructive here. InPerkins v. Benguet Consolidated Mining Co.,342 U.S. 437, 438 (1952) the Supreme Court first addressed the question of whether a state could exercise jurisdiction over a foreign corporation on a cause of action unrelated to the corporation's forum activities. It held that such jurisdiction was *Page 6 
constitutional when the corporation had been carrying on "a continuous and systematic, but limited, part of its general business" in the forum state. Id. at 438. The Court's holding was based on careful analysis of the defendant corporation's activities in the forum state: the chief officer maintained an in-state office where he kept company files, carried on company correspondence, held directors' meetings, established in-state bank accounts, and generally carried on "a continuous and systematic supervision of the necessarily limited wartime activities of the company." Id. at 447-48.
In contrast, in Helicopteros Nacionales deColombia, S.A. v. Hall, 466 U.S. 408 (1984), the Supreme Court found that a Columbian corporation's business contacts with Texas were insufficient to confer general jurisdiction where the corporation's chief executive officer flew to Texas to negotiate the transportation contract, purchased most of its helicopters from a Texas company, and sent personnel to Texas for training. The Court held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a non-resident corporation in a cause of action not related to those purchase transactions." Id. at 417.
Based upon the limited record before the Court, this case appears to fall somewhere between Perkins and Helicopteros. Unlike Perkins, Rhode Island is not even temporarily Carquest's principal place of business for supervising company activities. The Carquest affidavit states that it is not authorized to conduct business in this state and does not have property, office space, employees, a mailing address, or bank accounts here.See Cerberus Partners, 836 A.2d at 1122 (finding a lack of general jurisdiction where the defendant "maintains no office in Rhode Island, neither owns nor leases *Page 7 
property here, maintains no records here, has neither agent, telephone number nor mailbox here").
However, while Carquest's contacts may not rise to the level of those in Perkins, they involve more than the "mere purchases" and activities incidental to purchase transactions found insufficient in Helicopteros. Unlike Helicopteros, Carquest solicits business in Rhode Island by permitting independent stores to operate under its name and sell the Carquest brand of auto parts. The Plaintiffs have clearly demonstrated through Carquest's own website that there are at least ten Carquest Auto Parts stores operating in the State of Rhode Island.
The relationship between Carquest and Carquest Auto Parts stores is the subject of dispute. At oral argument, counsel for Carquest insisted that the presence of multiple Carquest Auto Parts stores in this state is "a red herring" since these stores have "nothing whatsoever to do with Carquest Corporation." (Tr. 5.) He explained that Carquest Auto Parts stores are independently owned and operated, not franchises, and have no direct agreements with Carquest itself. Rather, Carquest enters licensing agreements with its eleven member warehouse distributors, which in turn "sublicense the right to use the name CARQUEST to independent auto parts stores." (Tr. 6.) According to defense counsel, "Carquest corporation only negotiates with the manufacturer to make . . . [Carquest brand products] available to any independent company or member company that wants to buy them." (Tr. 7.)
The Court finds it difficult to square Carquest's assertion that it "has no relationship or ties whatsoever to any of the Carquest stores named in Rhode Island" and "does not manufacture, sell or distribute any products" with admissions made on its own *Page 8 
website that there are "3,400 CARQUEST Auto Parts Stores" in North America and that CARQUEST is "the premier supplier" of parts for "virtually all makes of automobiles." The website creates an undeniable impression that there is a connection between Carquest and Carquest Auto Parts stores. The site also contains a page that permits a member of the public to request information about becoming a Carquest Auto Parts store owner and lists some of the benefits of membership affiliation, including "dedicated corporate support."
When determining whether a plaintiff has alleged sufficient facts to make out a prima facie case of jurisdiction, this Court is instructed to "accept the facts alleged by the plaintiff as true, and view disputed facts in the light most favorable to the plaintiff." Cassidy, 920 A.2d at 232. Plaintiffs have effectively controverted Carquest's assertion that it has no relationship with the ten Carquest Auto Parts stores currently operating in Rhode Island and, therefore, no contacts with this state.
Determining whether a nonresident defendant's contacts with this state are sufficient to confer general jurisdiction is a fact-intensive inquiry. See Roger Williams GeneralHospital v. Fall River Trust Co.,423 A.2d at 1384, 1386 (R.I. 1985). Aside from Defendant's affidavit and the information contained on Carquest's website, however, the record contains little information about the nature of Carquest's contacts with Rhode Island.
For example, the term, "continuous and systematic," requires this Court to evaluate Carquest's contacts with Rhode Island over time. The Court has no information about how many Carquest Auto Parts stores were in Rhode Island at the time Plaintiffs' complaints were filed or during the years leading up to that date. The record is also *Page 9 
devoid of information concerning the quantity of Carquest brand products sold and delivered to Rhode Island. Courts are advised when making a jurisdictional decision to "consider defendant's dollar amount of business in Rhode Island as well as the percentage of its Rhode Island business as against its total corporate sales"White v. Shiller Chemicals, Inc.,379 F.Supp. 101, 104 (D.R.I. 1974), aff'd503 F.2d 1396 (1st Cir. 1974). In addition, more needs to be known about Carquest's relationship with the Carquest Auto Parts stores operating in Rhode Island. Specifically, there is clear controversy over whether Carquest is a franchise, and few details are known about the support offered by Carquest to its member stores. Advertising and marketing activities, though generally insufficient in the absence of other contacts, are also considered by our courts. See Casey v. TreasureIsland at Mirage, 745 A.2d 743, 745 (R.I. 2000) (mailing advertising to previous customers, in the absence of any other meaningful activity directed toward Rhode Island, insufficient for exercise of general jurisdiction); see also Roger WilliamsGeneral Hospital v. Fall River Trust Co.,423 A.2d 1384, 1387 (R.I. 1981).
The Plaintiffs seek to conduct additional jurisdictional discovery concerning Carquest's business contacts with Rhode Island. InSmith v. Johns-Manville Corp., 489 A.2d 336, 339 (R.I. 1985), our Supreme Court recognized that jurisdictional fact discovery "should be granted where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.'" (quoting Cheng v. BoeingCo., 708 F.2d 1406, 1412 (9th Cir. 1983)). This Court concludes that this is an appropriate case in which to permit limited jurisdiction discovery *Page 10 
because key facts relating to Carquest's contacts with Rhode Island are controverted and unknown. Moreover, many of these facts are within Carquest's exclusive control. Id.
Accordingly, before ruling on Defendant's motion to dismiss, the Court will permit Plaintiffs to conduct jurisdictional fact discovery concerning Carquest's contacts with Rhode Island. Counsel shall submit an appropriate order for entry.