Laura Love ROSE et al.

v.

**FIRSTAR BANK et al.**

No. 2001–556–M.P.

Supreme Court of Rhode Island.

March 27, 2003.

Brian C. Newberry, James A. Bigos/Leon C. Boghossian, III, Providence, for Plaintiff.

Stephen M. Prignano, Annemarie Carney, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

Personal jurisdiction provides the *plat du jour* on this certiorari petition. A Rhode Island mother and her two children, who are the beneficiaries of an Ohio trust, have haled an Ohio trustee into the Providence County Superior Court to answer charges of mismanaging the trust. An Ohio resident, now deceased, created the trust in Ohio, pursuant to which an Ohio bank and its predecessors have served as the trustee for many years. After her mother created the trust in Ohio, the plaintiff Laura Love Rose (Rose), a beneficiary of the trust, moved to Rhode Island and became a resident of this state. Indeed, she has lived here for the past twenty-seven years. After Rose moved here, the trustee periodically continued to send trust-related statements, checks, and other such documents to Rose and her two children in Rhode Island. Occasionally, the bank and its predecessor trustee would also communicate with her by telephone on matters relating to the trust. Based on these contacts, a Superior Court motion justice ruled that the Superior Court possessed personal jurisdiction over the Ohio-based trustee, the defendant, Firstar Bank (Firstar or the bank), and that comity considerations did not require the court to abstain from adjudicating this case.

■ To review the Superior Court's order denying the bank's motion to dismiss the complaint for lack of personal jurisdiction, we issued a writ of certiorari and granted a stay of further proceedings in that court pending our decision on Firstar's petition for certiorari. We now reverse, holding that the Superior Court lacked personal jurisdiction over the bank because, in its capacity as trustee, the bank never purposefully availed itself of the benefits of doing business in this jurisdiction and the beneficiaries' trust-mismanagement claims do not arise out of the bank's Rhode Island contacts.[1]

### Facts and Travel

In 1962, in her last will and testament, Elizabeth Allen Love (Allen) established a testamentary trust for the benefit of her husband and, upon his death, their children. After Allen died in 1969, the Probate Court of Hamilton County, Ohio (Ohio Probate Court), admitted the will to probate. Later, pursuant to the terms of the trust, the court appointed First National Bank of Cincinnati (First National) as

---

1. The bank, in its brief to this Court, suggested that the Superior Court did not have *"in rem* jurisdiction over the Ohio trustee and Ohio trust."* This argument, however, was not included in its motion to dismiss for lack of personal jurisdiction and was not presented to the Superior Court justice. Thus, it is not properly preserved before this Court. In any event, the beneficiaries did not allege or substantiate the existence of *in rem* jurisdiction—nor could they have done so, given that the trust itself was located in Ohio and its only relationship with Rhode Island stemmed from the fact that its remaining beneficiaries were Rhode Island residents. Thus, we conclude, Rhode Island would be unable to exercise *in rem* jurisdiction over the trust even if the beneficiaries had asked it to do so, which they did not do.

trustee. For several years, First National administered the trust and submitted regular accountings to the Ohio Probate Court. Thereafter, following a series of corporate reorganizations, Firstar succeeded First National as trustee and continued to administer the trust from its offices in Cincinnati, Ohio, submitting biennial accountings to the Ohio Probate Court.

Rose and her children, Alexander and Marshall Rose (collectively plaintiffs or the beneficiaries), are the sole remaining beneficiaries of this trust.. As Rhode Island residents, they filed this action in Providence County Superior Court in 2001, alleging inappropriate investments and other mismanagement of the trust by Firstar and seeking its removal as trustee. The bank responded by moving to dismiss the complaint, arguing that the Superior Court lacked personal jurisdiction over the bank as trustee. Relying on *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the motion justice denied the bank's motion, concluding that the bank's contacts with Rhode Island were sufficient to satisfy due-process considerations. Firstar then petitioned this Court for a writ of certiorari, which we issued. We then stayed further proceedings in the trial court until we could resolve the jurisdictional questions posed by this case.

### In Personam Jurisdiction

The key jurisdictional issue is whether the motion justice correctly found that the bank's contacts with Rhode Island were sufficient to satisfy the minimum-contacts test that is required to support the Superior Court's exercise of personal jurisdiction over the bank as a nonresident defendant.

■ Jurisdiction in this forum over a nonresident defendant requires both that the complainant allege facts sufficient to satisfy the requirements of Rhode Island's "long-arm" statute, and that the court's exercise of personal jurisdiction comports with the requirements of constitutional due process. *McKenney v. Kenyon Piece Dye Works, Inc.*, 582 A.2d 107, 108 (R.I.1990). Rhode Island's "long-arm" statute provides that "[e]very foreign corporation * * * that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island * * * in every case not contrary to the provisions of the constitution or laws of the United States." G.L.1956 § 9–5–33(a). As interpreted by this Court, § 9–5–33(a) permits the exercise of jurisdiction over nonresident defendants to the fullest extent allowed by the United States Constitution. *McKenney*, 582 A.2d at 108.

■ The Due Process clause of the United States Constitution limits the exercise of personal jurisdiction over nonresident defendants to those who "have certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). In applying this standard, courts have analyzed the "quality and quantity of the potential defendant's contacts with the forum." *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir.1999).

■ To establish that the forum court possesses personal jurisdiction over a nonresident defendant a plaintiff must allege and prove the existence of either general or specific personal jurisdiction. When its contacts with a state are continuous, purposeful, and systematic, a nonresident defendant will subject itself to the general jurisdiction of that forum's courts with respect to all claims, regardless of whether they relate to or arise out of the nonresident's contacts with the forum. *Interna-*

*tional Shoe Co.*, 326 U.S. at 318, 66 S.Ct. at 159, 90 L.Ed. 95 at 103. Thus, if a nonresident's contacts with a forum are sufficient for general personal jurisdiction to exist, then such a party may be sued in that forum for "causes of action arising from dealings entirely distinct from those activities." *Id.;* see also *Casey v. Treasure Island at Mirage,* 745 A.2d 743, 744 (R.I.2000) (per curiam) (explaining that when a plaintiff's cause of action does not arise out of the nonresident defendant's contacts with Rhode Island, due process requires that the defendant's contacts with this forum be "systematic and purposeful before *in personam* jurisdiction can be established").

In this case, the bank's only contacts with Rhode Island were its communications with and its distribution of money to the trust beneficiaries who lived here. Although these contacts spanned twenty-seven years and are continuing to this day, we need not determine whether they were systematic and purposeful enough to establish the existence of general personal jurisdiction over the bank because the beneficiaries have conceded "that there is no claim of general jurisdiction in this matter."

▬▬▬ Instead, the beneficiaries contend that the Superior Court possessed specific personal jurisdiction over the bank. To sustain such specific jurisdiction, "[a]ll that need be shown is a 'relationship among the defendant, the forum, and the litigation.'" *Ben's Marine Sales v. Sleek Craft Boats,* 502 A.2d 808, 812 (R.I. 1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 411 (1984)). Thus, even when a defendant's contacts with the forum are insufficient to support general jurisdiction, a court may exercise specific personal jurisdiction over the nonresident defendant if the claim sufficiently relates to or arises from any of a defendant's purposeful contacts with the forum. For specific personal jurisdiction to exist, however, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Maryland Central Collection Unit v. Board of Regents for Education of the University of Rhode Island,* 529 A.2d 144, 151 (R.I.1987) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958)).

The beneficiaries argued that the Superior Court possessed specific personal jurisdiction over the bank because their claims arose out of the bank's contacts with them in this state. They relied on *McGee,* for the proposition that a single contact with a forum state can sustain personal jurisdiction over an out-of-state defendant, so long as the cause of action arises out of that contact. In *McGee,* a Texas corporation, assuming the obligations of an Arizona insurer, mailed a reinsurance certificate to a California policyholder whom the Arizona insurer originally had insured. *McGee,* 355 U.S. at 221–22, 78 S.Ct. at 200, 2 L.Ed.2d at 225. The California policyholder accepted the offer from the Texas insurer to renew its insurance contract and mailed the required premiums from California to the Texas insurer. *Id.* The United States Supreme Court held that, based on the Texas insurer's purposeful solicitation of this reinsurance business from the California policyholder and the policyholder's acceptance of this offer in California, a California court could exercise jurisdiction over the Texas defendant because "[i]t is sufficient for purposes of due process that the suit was based on a contract which has a substantial connection with [the forum] State." *Id.* at 223, 78 S.Ct. at 201, 2 L.Ed.2d at 226.

In this case, the motion justice concluded that *McGee* was dispositive. He reasoned that the bank had engaged in the requisite minimum contacts with Rhode Island based on a series of telephone calls and correspondence between the bank and the trust's Rhode Island beneficiaries that occurred on a regular basis over a period spanning twenty-seven years. Further, the motion justice opined, if the bank and its officials did not want to subject themselves to suit in Rhode Island courts, they could have and should have "resigned their duties as trustees." Finally, he observed, the bank, as a corporation with a "network of law firms or the wherewithall to contact * * * a highly reputable [law] firm" was more able to litigate in a foreign jurisdiction such as Rhode Island than the beneficiaries would be if they had to sue the bank in Ohio.

When assaying personal-jurisdiction issues, however, it is important to remember that *McGee* marks the outer limits of what type of minimum contacts with a forum state will sustain specific personal jurisdiction. Although this Court has noted that "a single act having impact in and connection with the forum state can satisfy the minimum-contact test of *International Shoe Co.*," the factual circumstances in *McGee* were materially different from the situation in this case with respect to the crucial element of solicitation. *Ben's Marine Sales*, 502 A.2d at 812 (quoting *Trustees of the Sheppard and Enoch Pratt Hospital v. Smith*, 114 R.I. 181, 184, 330 A.2d 804, 806 (1975)).

■ Unlike the Texas insurer in *McGee*, the Ohio bank in this case did not solicit any new or additional trust business in Rhode Island, much less did it solicit or deliberately seek out the beneficiaries in Rhode Island for the purpose of initiating a sales contract with them or soliciting them to continue to do business with the bank. When the bank assumed its trust-

eeship, neither the trust nor applicable law required it to solicit or obtain the beneficiaries' approval; thus, it did not do so. And the bank's periodic mailings of trust-account statements and checks to the beneficiaries, together with any occasional telephone calls that related thereto, were not equivalent to the solicitation of an insurance-policy renewal and the subsequent maintenance of a business relationship thereunder, as occurred in *McGee*.

In evaluating the significance of these circumstances for establishing personal jurisdiction, we find ourselves agreeing with the Montana Supreme Court in *Matter of Estate of Ducey*, 241 Mont. 419, 787 P.2d 749 (1990). In that case, the Montana court faced a similar jurisdictional question and concluded that for Montana to assume personal jurisdiction over the nonresident trustee would exceed the limits of due process. In *Ducey*, a Nevada resident created a trust in Nevada and later relocated to Montana, where she died. *Id.* at 750. The estate filed a petition in a Montana District Court, seeking to transfer the trust assets from Nevada to the estate and opposing the appointment of the Nevada bank as trustee. *Id.* The Montana Supreme Court distinguished *McGee*, reasoning that the Nevada bank's payments of trust income to the settlor in Montana, and "several bits of trust administration that may be compared to the mailing of premiums in *McGee*," did not constitute "acts in Montana that bear the same relationship to the trust agreement as the solicitation of re-insurance in *McGee*." *Id.* at 752.

The jurisdictional principles elucidated by the Supreme Court in *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283, 1298 (1958), we hold, are controlling in this situation rather than those that carried the day in *McGee*. In *Hanson*, a settlor established

a trust in Delaware, naming a Delaware trustee to administer it. The settlor then moved to Florida, where she continued to receive payments from the trust. After her death, certain legatees of the settlor sued in Florida to declare a provision of the trust invalid and thereby maximize their legacies. *Id.* at 241–42, 78 S.Ct. at 1233, 2 L.Ed.2d at 1291. The United States Supreme Court held that the Florida court lacked personal jurisdiction over the Delaware trustees because the nonresident trustees did nothing to purposely avail themselves of the benefits of doing business in Florida—other than to continue sending trust payments and related documents to the settlor in Florida. With some insignificant differences, this is basically the same situation that exists in this case.

The beneficiaries seek to distinguish *Hanson* by drawing our attention to the differences in the claims. To be sure, the plaintiffs' claim in *Hanson* dealt with the validity of the trust, whereas in this case the beneficiaries have accused the bank of mismanaging the trust. But this distinction is irrelevant for the purpose of deciding whether personal jurisdiction exists over the out-of-state trustee. *Hanson* emphasized that the claim must be linked to the trustee's having purposefully availed itself of the benefits of doing business in the foreign state for personal jurisdiction to exist over the trustee. *See Hanson,* 357 U.S. at 253, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298 ("it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws"). In *Hanson,* the trustee's acts in sending trust payments and documents into the jurisdiction where the settlor had taken up residence were insufficient as a matter of law to constitute the requisite minimum contacts. The same is likewise true in this case—even though here a beneficiary rather than the settlor was the itinerant party.

Although Rhode Island has an interest in protecting the rights of its residents who do business with out-of-state parties, the state's only connection with this trust arose out of the fact that a beneficiary moved here many years ago after the trustee's relationship with her had begun in another jurisdiction. Thereafter, she and her children, who constituted the sole remaining beneficiaries of the trust, chose to remain here as residents while the bank merely succeeded to its status as trustee from its Ohio predecessor and thereafter continued to perform the same trustee services as its predecessor had provided in the past. But as this Court said in *Conn v. ITT Aetna Finance Co.,* 105 R.I. 397, 409, 252 A.2d 184, 190 (1969), "that * * * is not enough" to constitute purposeful availment of the privilege of conducting business in this state:

> "What plaintiff relies upon to give our courts jurisdiction over the trustees is that certain beneficiaries of the profit-sharing trust, either actual or potential, work and live in this state. That, however, is not enough.

> "In our judgment there are no facts in this case which distinguish it from *Hanson v. Denckla, supra.* The defendants have no office in this state, they transact no business here, they do not hold nor administer any trust assets here, and *they have not engaged in any activities in this state which resulted in Rhode Island domiciliaries becoming beneficiaries of the profit-sharing trust they administer.* There is, moreover, nothing in the record before us which even remotely suggests that the alleged right which plaintiff asserts arose in this state. In short, the trustees did not in any way purposely avail themselves of the privilege of conducting activities

within this state and thereby invoke the benefits and protection of its laws." *Id.* at 409–10, 252 A.2d at 190. (Emphasis added.)

The situation here is that an Ohio resident created an Ohio trust in Ohio, naming an Ohio bank as trustee for the benefit of the Ohio residents who were then the sole beneficiaries of the trust. Given these circumstances, allowing trust beneficiaries to hale the trustee into a vast and geographically limitless diaspora spanning any and all jurisdictions into which one or more of the beneficiaries later choose to move or relocate—simply based on their unilateral act of changing their residence to that jurisdiction—would offend "'traditional notions of fair play and substantial justice.'" *International Shoe Co.,* 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102. In such circumstances, the trustee has not purposely availed itself of the benefits of doing business in that new jurisdiction; rather, the trustee has simply opted to continue servicing the preexisting trust business that it or its predecessors obtained elsewhere.

Thus, the motion justice erred, we conclude, in relying on *McGee* for the proposition that the bank has engaged in sufficient minimum contacts with this state to support the exercise of personal jurisdiction over it. The bank was an Ohio corporation with no place of business in Rhode Island. It neither owned property here nor did it have any employees in this state. Furthermore, it did not advertise or solicit business in Rhode Island. The only contacts alleged between the bank and this forum were its periodic telephone conversations and correspondence with the beneficiaries related to the administration of the trust. These communications were regular but relatively infrequent; in any event, the beneficiaries have conceded that they did not constitute an ongoing pattern of doing business here sufficient to sustain a finding of general "doing business" jurisdiction. *Compare Nicholson v. Buehler,* 612 A.2d 693, 697–98 (R.I.1992) (holding that the foreign defendant was amenable to suit in Rhode Island because of its communications with the plaintiff in which the parties negotiated for public-relations services and scheduled payments) with *Conn,* 105 R.I. at 409, 252 A.2d at 190 (holding that the mere fact that beneficiaries live and work in Rhode Island is not enough to impose personal jurisdiction over the nonresident defendants).

In this case, the beneficiaries have alleged that the bank mismanaged the trust and failed to adequately communicate with them, thereby depriving them of greater investment earnings. But any such mismanagement and lack-of-communication decisions necessarily must have occurred in Ohio, which was the situs of the trust's administration. Furthermore, it is ironic to note that the beneficiaries' claims against the bank include allegations of unresponsiveness and insufficient contacts with them in Rhode Island. Such allegations posit inaction and a dearth of contacts by the trustee with this jurisdiction. But it is this very inaction and lack of contact with Rhode Island that supports the bank's position that it did not purposefully avail itself of the benefits of doing business here. Thus, the beneficiaries have not shown that the trustee engaged in the business of administering the trust in this state nor that their claims against the trustee arose out of its contacts with Rhode Island.

Nonetheless, the beneficiaries insist that the bank submitted itself to this jurisdiction by purposefully availing itself of the benefits of Rhode Island law. They point out that the bank knowingly agreed to serve as trustee after Rose relocated here. They characterize the bank's decision to assume the duties of trustee with knowl-

edge that all beneficiaries resided here as the legal equivalent for jurisdictional purposes of expanding its business operations into this jurisdiction.

■ This argument, however, stumbles on the principle that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Bendick v. Picillo*, 525 A.2d 1310, 1312 (R.I.1987) (quoting *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239–40, 2 L.Ed.2d at 1298). *See also Ben's Marine Sales*, 502 A.2d at 810 ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.") (quoting *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239–40, 2 L.Ed.2d at 1298). We hold that the bank has not purposefully availed itself of the benefits of Rhode Island law merely by agreeing to and continuing to serve as the trustee for this trust after one of the trust's beneficiaries had moved her residence to this jurisdiction and then continued to reside here with her children.

Further, merely by sending trust statements, by mailing trust-related checks, and by making occasional trust-related telephone calls to the trust beneficiaries who resided in this state, the bank did not thereby purposely avail itself of the privilege of doing business here. *Compare McKenney*, 582 A.2d at 109 (holding that a foreign defendant who sold a machine to a Rhode Island plaintiff "availed itself of the privileges of conducting business within the State of Rhode Island as well as the benefits and protections of its laws") *with Phillips Exeter Academy*, 196 F.3d at 292 ("to make a prima facie showing of purposeful availment, it is not enough to prove that a defendant agreed to act as the trustee of a trust that benefited a resident of the forum state"). Simply put, these communications were not the purposeful availment of doing business in Rhode Island. *See Casey*, 745 A.2d at 745 (holding that the brochures and other mailings that a Nevada casino sent to its former patrons in Rhode Island did not constitute the solicitation of business for the purpose of establishing personal jurisdiction here).

Finally, we reject the beneficiaries' characterization of the bank's decision to serve as trustee and to continue providing trust services to the beneficiaries of the trust—despite knowing that they lived in Rhode Island—as a decision to purposefully expand the bank's trust business into this state. In this case, the bank merely assumed control of the previously created trust as part of its succession to First National's interests following a corporate reorganization. And it did so pursuant to the trust instrument itself with no need to obtain approval from any court or beneficiary. Thereafter, as the settlor contemplated, the trustee continued to service the beneficiaries of that trust, wherever they might be found. Thus, this is not a *McGee* situation in which a corporation or other entity solicits new business from individuals and others who may live or work in this jurisdiction, and the claim arises out of or relates to that contact with the forum jurisdiction. "Without evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship—say, by solicitation * * *—the mere fact that the defendant willingly entered into a tendered relationship does not carry the day." *Phillips Exeter Academy*, 196 F.3d at 292.

## Conclusion

In sum, we are unable to conclude that "the [bank's] conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court [here]." *Bendick*, 525 A.2d at 1312

(quoting *Violet v. Picillo,* 613 F.Supp. 1563, 1574 (D.R.I.1985)).

Because of our ruling on personal jurisdiction, we decline to address the other issues that the parties have raised with us. Thus, we grant the petition for certiorari, quash the order of the Superior Court denying the bank's motion to dismiss for lack of personal jurisdiction, and remand this case with our opinion endorsed thereon to the Superior Court for entry of a judgment in favor of the bank, dismissing the complaint for lack of personal jurisdiction.