November 21, 2019

**Supreme Court**

No. 2018-316-Appeal.
(PC 16-4227)

Edward F. St. Onge                    :

v.                    :

USAA Federal Savings Bank et al.        :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Edward F. St. Onge          :

v.                          :

USAA Federal Savings Bank et al.     :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  The plaintiff, Edward St. Onge, appeals *pro se* from the dismissal of his claims against the defendants, USAA Federal Savings Bank (USAA) and Charles Baird (Baird), for lack of personal jurisdiction.  This case came before the Supreme Court on November 6, 2019, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the orders of the Superior Court.

## I

### Facts and Travel

This dispute arose from an alleged oral agreement between plaintiff and Baird, with whom plaintiff was a long-time friend.  The plaintiff is a resident of Rhode Island, and Baird is a resident of Florida.  According to the complaint, Baird sought plaintiff's help resolving a will dispute in Florida. In the disputed will, which was handwritten, Baird was named sole beneficiary.  The plaintiff alleged that, after Baird's repeated requests for his assistance, he

finally contracted with Baird on or about April 15, 2015, to perform certain consulting and other services regarding the will dispute.[1] In return for his services, plaintiff alleged, he would be reimbursed by Baird for expenses that plaintiff advanced and the fair market value of his services, should Baird prevail; plaintiff would earn nothing if Baird did not prevail.

From mid-April 2015 until May 31, 2016, plaintiff alleged, he performed "numerous services" for Baird, which included traveling to and from Florida, at plaintiff's own expense. The plaintiff asserts that he assisted Baird in "interview[ing], select[ing], secur[ing,] and oversee[ing] legal services from a Florida attorney." After assisting Baird in securing an attorney, plaintiff continued to work with Baird, he alleged, "to help him successfully prevail in the [w]ill contest as well as inventorying and evaluating claims of alleged creditors and negotiating favorable settlement of numerous outstanding debts of the [inherited] Estate." The plaintiff alleged that he performed the work for Baird in both Rhode Island and Florida, always traveling at plaintiff's own expense.

After prevailing in the will dispute, and after the creditors' window of time to file claims against the estate had expired, Baird transferred $40,000 from the estate to his personal checking account at USAA. USAA is a bank that is incorporated in Texas and based in San Antonio. The plaintiff alleges that the bulk of that money, by agreement of Baird, was to be paid to plaintiff for his services and, at Baird's direction, plaintiff was authorized to pay an agreed-upon total of $25,355.67 from Baird's USAA account to plaintiff's credit-card accounts directly. Thereafter, the funds were paid to five different national credit-card accounts belonging to plaintiff. However, on June 28, 2016, USAA rescinded all the credit-card payments, without notice to

---

[1] The plaintiff had previously worked as an attorney, but he was not practicing at the time Baird's will dispute arose. The plaintiff was suspended from the practice of law in 2008 for a period of eighteen months, by order of this Court. *In re St. Onge*, 958 A.2d 143, 146 (R.I. 2008) (mem.). He has not sought reinstatement.

plaintiff. Additionally, plaintiff alleges that Baird executed a check from his USAA account to plaintiff in the amount of $9,644.33 and that the check was returned and marked "Not Authorized."

The plaintiff filed a complaint in Providence County Superior Court on September 7, 2016, against both Baird and USAA, seeking to recover the rescinded funds plus interest, costs, and consequential damages. Baird filed a motion to dismiss the case for lack of personal jurisdiction. An order granting the motion was entered on January 28, 2017.[2] A default judgment was entered against USAA for failing to defend against the action but was later vacated on the ground that the Superior Court lacked personal jurisdiction over USAA. USAA then moved to dismiss the claim against it for lack of personal jurisdiction, which was granted. That order was entered on June 29, 2018. The plaintiff filed a notice of appeal on July 17, 2018.[3]

---

[2] The plaintiff filed a notice of appeal from the order dismissing his claims against Baird for lack of personal jurisdiction on March 17, 2017. The case was referred to the full Court sitting in conference for possible disposition without further briefing, in accordance with Article I, Rule 12A(3)(b) of the Supreme Court Rules of Appellate Procedure. There, we determined in May 2018 that plaintiff's appeal was not properly before this Court because the action against USAA remained pending. "In order to perfect an appeal from a multiparty suit, there must be entry of final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure." *Catone v. Multimedia Concepts, Inc.*, 483 A.2d 1081, 1082 (R.I. 1984). We thereafter remanded the case to the Superior Court, where the remaining claim against USAA was resolved, and this appeal followed.

[3] The plaintiff's July 17, 2018 notice of appeal identifies only the June 29, 2018 order dismissing claims against USAA as the "judgment or order" appealed from. Although the January 28, 2017 order dismissing claims against Baird for lack of jurisdiction was not listed on the notice of appeal, we nevertheless consider the arguments regarding that order on appeal, because the June 29, 2018 order was a final order and therefore encompassed all prior interlocutory orders. *See Greensleeves, Inc. v. Smiley*, 942 A.2d 284, 291 (R.I. 2007) (holding that a notice of appeal that referred only to the final order was sufficient to support review of earlier orders, especially in light of an earlier unsuccessful attempt to take a premature appeal from that order); *State v. Piedmont Funding Corporation*, 121 R.I. 27, 29, 394 A.2d 694, 695 (1978) (holding that a "final judgment or order for purposes of appealability is one that terminates all the litigation arising out of the action between the parties on the merits").

## II

## Standard of Review

When reviewing a challenge to personal jurisdiction, "[w]e examine the pleadings, accept the facts alleged by the plaintiff as true, and view disputed facts in the light most favorable to the plaintiff." *Cassidy v. Lonquist Management Co., LLC*, 920 A.2d 228, 232 (R.I. 2007). The question of personal jurisdiction presents a "mixed question[] of law and fact[.]" *Hawes v. Reilly*, 184 A.3d 661, 665 (R.I. 2018) (quoting *Cassidy*, 920 A.2d at 232). While mixed questions of law and fact usually require more deferential treatment to the trial justice's findings of fact, "when deciding mixed questions of law and fact that involve constitutional issues, our review is *de novo*." *Id.* (quoting *Cassidy*, 920 A.2d at 232). We therefore review a challenge to personal jurisdiction *de novo*. *See, e.g.*, *id.*

## III

## Discussion

## A

## Jurisdiction Over USAA

The issue before us is whether plaintiff has alleged "'sufficient facts to make out a *prima facie* case of jurisdiction,' in order to overcome [USAA's] motion to dismiss pursuant to Rule 12(b)(2) of the Superior Court Rules of Civil Procedure." *Cassidy*, 920 A.2d at 231-32 (quoting *Cerberus Partners, L.P. v. Gadsby & Hannah, LLP*, 836 A.2d 1113, 1118 (R.I. 2003)). In reviewing the record, we accept the facts alleged by plaintiff as true and view disputed facts in the light most favorable to plaintiff. *Id.* at 232.

"To establish a *prima facie* showing of personal jurisdiction in Rhode Island, a plaintiff's allegations must satisfy the demands of Rhode Island's long-arm statute, [G.L. 1956] § 9-5-33."

*Cassidy*, 920 A.2d at 232. That statute provides that "[e]very foreign corporation * * * that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island * * * in every case not contrary to the provisions of the constitution or laws of the United States." Section 9-5-33(a). "This language has been interpreted to mean that Rhode Island courts may exercise jurisdiction over foreign defendants within the parameters set forth by the United States Constitution." *McKenney v. Kenyon Piece Dye Works, Inc.*, 582 A.2d 107, 108 (R.I. 1990).

The forum court has personal jurisdiction over a defendant when either general jurisdiction or specific jurisdiction is alleged and proven by the plaintiff. *See Hawes*, 184 A.3d at 670. In the present case, plaintiff asserts that the Superior Court has both general and specific jurisdiction over USAA.

**1**

**General Jurisdiction**

We begin by addressing plaintiff's argument with regard to general jurisdiction over USAA. In *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the United States Supreme Court established that a court has general jurisdiction over a corporation in the state in which it is incorporated, where it has its principal place of business, and where the "corporation's 'affiliations with the [s]tate are so continuous and systematic as to render it *essentially at home* in the forum [s]tate.'" *Daimler*, 571 U.S. at 139 (emphasis added) (brackets omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Where a court has general jurisdiction over a defendant, it may hear any claim involving that defendant, regardless of whether or not the claim arose out of the defendant's contacts with the forum state. *Cassidy*, 920 A.2d at 233.

The plaintiff asserts that USAA is "at home" in Rhode Island, and that the Superior Court has general jurisdiction over USAA because of "sweeping changes" that he alleges have occurred in the banking industry after *Daimler* was published in 2014, which changes, according to plaintiff, would allow for a Rhode Island court to have general jurisdiction over USAA. Specifically, he points to direct-deposit and online banking services, as well as advertising by USAA in Rhode Island, to support this contention. He further argues that "USAA is at least as much 'at home' in Rhode Island as it is in any other [s]tate, excepting Texas."

This approach, however, ignores the developing body of law created by *Daimler* that general jurisdiction will be exercised only where a defendant is "at home" in the forum state, either through incorporation, principal place of business, or, in rare circumstances, where the defendant is "essentially at home." *Daimler*, 571 U.S. at 139; *see, e.g.*, *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017); *Waite v. AII Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018); *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 626 (2nd Cir. 2016). Here, USAA is incorporated in Texas. The plaintiff alleged in his complaint that USAA has its "corporate headquarters" in Texas, an allegation that is confirmed by USAA's statement submitted to this Court pursuant to Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure. Clearly, personal jurisdiction does not exist under the first two principles, because USAA is not incorporated in Rhode Island, nor is its principal place of business located in the state. *See Daimler*, 571 U.S. at 137.

Regarding the third principle, "essentially at home[,]" *Daimler* stands for the proposition that this is a high standard of limited applicability. *See Daimler*, 571 U.S. at 133 n.11 (concluding that "essentially at home" means "comparable to a domestic enterprise in that [s]tate"). We decline to hold that mere advertising and online banking options in this state rise to

the level of being "essentially at home" here, even in viewing the facts in the light most favorable to plaintiff. The plaintiff's argument misinterprets the Supreme Court's explanation of "essentially at home." In *Daimler*, the Supreme Court eliminated the previous general jurisdiction analysis, which required the forum court to review a corporation's *contacts* in the forum state, and instead required the forum court to review the corporation's *affiliations* with the forum state in order to determine whether there is general jurisdiction. *Id.* at 138-39. While the Supreme Court did not explicitly define the word *affiliations*, we hold that the level of affiliation must be comparable to that of a principal place of business or incorporation in order to render the corporation "essentially at home." *Id.* at 139. The plaintiff's factual allegations in this case do not indicate to us that USAA has sufficient affiliations with Rhode Island to consider USAA at home in the state.

Furthermore, plaintiff's argument that "USAA is at least as much 'at home' in Rhode Island as it is in any other [s]tate, excepting Texas" cuts directly against the policy behind *Daimler*, which is to minimize subjecting corporations to general jurisdiction in every state in the country. *See Daimler*, 571 U.S. at 139, 139-40 n.20 (noting that "[a] corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved"). To say that USAA is "at home" in every state indicates to us that a Rhode Island court does not have general jurisdiction over USAA, because USAA's affiliations with the State of Rhode Island are the same as its affiliations with "every state in the country." This clearly does not rise to the level of USAA being "at home" in Rhode Island. *See Daimler*, 571 U.S. at 139.

As such, we conclude that the Superior Court was correct in finding that it did not have general personal jurisdiction over USAA.

**2**

**Specific Jurisdiction**

Next, plaintiff alleges that, even if the Superior Court did not have general jurisdiction over USAA, it had specific jurisdiction. The determination of whether there is specific jurisdiction over the defendant requires a two-step inquiry: (1) determining whether there are sufficient minimum contacts with the forum state; and (2) determining that litigation in the forum state does not "offend traditional notions of fair play and substantial justice." *Rose v. Firstar Bank*, 819 A.2d 1247, 1250 (R.I. 2003) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A party makes a successful *prima facie* showing of specific jurisdiction over a defendant where "the claim sufficiently relates to or arises from any of a defendant's purposeful contacts with the forum." *Cassidy*, 920 A.2d at 233 (quoting *Rose*, 819 A.2d at 1251). The defendant must have "performed 'some act by which it purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Id.* (brackets omitted) (quoting *Rose*, 819 A.2d at 1251). In reviewing defendant's contacts with the forum, this Court looks to the "quality and quantity" of the contacts. *Rose*, 819 A.2d at 1250 (quoting *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999)). "When there is no such connection [to the forum state], specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the [s]tate." *Bristol-Myers Squibb Company v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1781 (2017).

The plaintiff alleges that "[s]ince USAA's contacts with Rhode Island don't need to be 'terribly robust' * * * specific personal jurisdiction, is met rather easily." The plaintiff asserts

that USAA maintains automatic teller machines in Rhode Island and that he has "personally seen their * * * cars registered, roaming billboards roaming around the state, and * * * seen their advertisements on the internet and on television[.]" The plaintiff ultimately alleges that "USAA became subject to personal jurisdiction in Rhode Island * * * when it looted funds of plaintiff, a Rhode Island resident, from his credit card accounts established and maintained, paid and used from Rhode Island." The only relevant contacts alleged by plaintiff were actions performed by USAA at the direction of Baird: the recession of credit-card payments and the returned "Not Authorized" check. *See Bristol-Myers Squibb*, 137 S. Ct. at 1781 (recognizing that "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum [s]tate'" (brackets omitted) (quoting *Goodyear*, 564 U.S. at 919)).

In *Cassidy*, however, we concluded that the "defendant's contacts with Rhode Island were on behalf of his employer and were not sufficient to support a finding that he purposefully availed himself of the privilege of conducting business in Rhode Island." *Cassidy*, 920 A.2d at 233. Likewise, we agree with USAA's argument that, because it was acting on Baird's behalf, we should decline to conclude that USAA "purposefully availed itself" of Rhode Island law. *See id.* For this reason, the check returned as "Not Authorized" *at Baird's direction* is not sufficient to support a finding that USAA purposefully availed itself of Rhode Island law.

Moreover, and to USAA's point, the rescinded credit-card payments were not paid directly to plaintiff or his Rhode Island bank account; rather, they were paid from Baird's USAA account, according to the complaint, "to [five] different national credit[-]card accounts belonging to [p]laintiff." The plaintiff acknowledged in the Superior Court that the money was paid from USAA to "credit issuers from *several* other states." (Emphasis added.) This indicates to us that

USAA's rescission of credit-card payments was not only on behalf of Baird, but also was not targeted at Rhode Island. *See Cassidy*, 920 A.2d at 233. Although plaintiff lives in Rhode Island and owns the affected accounts, we cannot rely on the unilateral activities of a plaintiff to assert jurisdiction over a defendant. *See Rose*, 819 A.2d at 1255 (reiterating the principle that "the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State" (brackets omitted) (quoting *Benedick v. Picillo*, 525 A.2d 1310, 1312 (R.I. 1987))).

Therefore, we hold that the Superior Court was correct in finding that it did not have specific personal jurisdiction over USAA.

**B**

**Jurisdiction Over Baird**

The plaintiff additionally argues that the trial justice erred in granting Baird's motion to dismiss for lack of personal jurisdiction.[4] The plaintiff asserts that the Superior Court had specific jurisdiction over Baird.[5] The plaintiff alleges that an exercise of specific jurisdiction over Baird does not offend fundamental principles of fair play and substantial justice.

As explained *supra*, the determination of whether specific jurisdiction exists over a defendant requires a two-step inquiry: (1) determining whether there are sufficient minimum contacts with the forum state; and (2) determining that litigation in the forum state does not "offend traditional notions of fair play and substantial justice." *Rose*, 819 A.2d at 1250 (quoting *International Shoe Co.*, 326 U.S. at 316). In determining whether litigation in the forum state

---

[4] Notably, plaintiff did not raise this argument in his initial Rule 12A statement; rather, he addressed the issue in his Rule 12A(4) show cause supplemental statement, in response to arguments on the issue of jurisdiction made by Baird in his Rule 12A counterstatement.

[5] The plaintiff did not raise the issue of general jurisdiction with regard to Baird. As such, we limit our analysis of personal jurisdiction over Baird to the issue of specific jurisdiction.

offends traditional notions of fair play and substantial justice, courts look to the "so-called '[G]estalt factors' to determine whether the exercise of personal jurisdiction is reasonable[.]" *Cerberus Partners, L.P.*, 836 A.2d at 1121. "These factors include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most effective resolution of the controversy, and the shared interest of the several states in furthering fundamental substantive social policies." *Id.* (citing *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 292 (1980); *State of Maryland Central Collection Unit v. Board of Regents for Education of University of Rhode Island*, 529 A.2d 144, 151 (R.I. 1987)).

The Gestalt factors are at issue only when sufficient minimum contacts have been established. *See Cerberus Partners, L.P.*, 836 A.2d at 1121. "Although these factors may establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required, they must be compelling if they are to defeat jurisdiction over a defendant with purposeful and clear contacts." *State of Maryland Central Collection Unit*, 529 A.2d at 151. Again, in reviewing the record, we accept the facts alleged by plaintiff as true and view disputed facts in the light most favorable to plaintiff. *Cassidy*, 920 A.2d at 232.

Here, plaintiff does not take issue with the trial justice's finding that Baird had sufficient minimum contacts with Rhode Island. Rather, plaintiff argues that the trial justice erred in finding that specific jurisdiction failed with regard to the "fair play and substantial justice" prong and application of the Gestalt factors.[6] We briefly address each factor and the party it favors.

---

[6] The trial justice, in her bench decision, found that plaintiff had alleged sufficient facts to make out a *prima facie* case of jurisdiction based on Baird's contacts with Rhode Island. As plaintiff does not contest this finding, and there is no cross-appeal by Baird, we decline to address the issue of minimum contacts and instead focus our analysis on the application of the Gestalt factors.

The first factor is the burden on the defendant. *Cerberus Partners, L.P.*, 836 A.2d at 1121. With regard to this factor, plaintiff argues that because "no medical affidavit of any kind" was offered to show that travel to Rhode Island from Florida would be difficult for Baird, the trial justice erred in weighing the first factor in favor of Baird. In support of his argument that Baird could easily travel, he states that "Baird is a licensed driver with extensive travel experience" and that Baird called plaintiff to tell him "that he was coming to Rhode Island to watch certain legal proceedings" against plaintiff. The plaintiff therefore argues that this factor should weigh in his favor. We disagree. As noted by the trial justice, "plaintiff doesn't even dispute * * * the fact that Mr. Baird has some significant health issues. It's really [plaintiff] who recited for the [c]ourt in his pleading Mr. Baird's hospitalizations and history of mental health problems which included PTSD, and has suggested that he's also afflicted by schizophrenia." Additionally, the trial justice reviewed emails "which clearly demonstrate that Mr. Baird has been in and out of the hospital" and that the "health issues are not minor" or "fleeting[.]" As such, this factor clearly weighs in favor of Baird, with plaintiff readily admitting Baird's health issues.

The second factor is the forum state's interest in adjudicating the dispute. *Cerberus Partners, L.P.*, 836 A.2d at 1121. The plaintiff argues that Rhode Island has an interest because "[t]his case is about a check that was dishonored in a Rhode Island account and the looting of this [Rhode Island] resident['s] Rhode Island based credit[-]card accounts after final payment to him of money fairly owed." With respect to this factor, which looks at the forum state's interest and does not ask us to compare the interests of other states, we agree with plaintiff that Rhode Island does have some interest in adjudicating the dispute. As such, the second factor weighs in favor of plaintiff.

The third factor is the plaintiff's interest in obtaining the most effective resolution of the controversy. *Cerberus Partners, L.P.*, 836 A.2d at 1121. The plaintiff advances no argument in support of this factor. Baird, however, argues that "this controversy centers around a Florida estate, a Florida resident and activities conducted in Florida" and that, therefore, Florida is "the most logical and convenient forum to obtain relief." We agree with Baird. Although plaintiff is a resident of Rhode Island, the majority of what transpired occurred in Florida. Florida is where the agreement was finalized and where the majority of the work allegedly took place, especially because the will dispute was in Florida. This leads us to conclude that the third factor weighs in favor of Baird.

The final factor is the shared interest of the several states in furthering fundamental substantive social policies. *Cerberus Partners L.P.*, 836 A.2d at 1121. The plaintiff disputes this factor by indicating that "[t]his book account case is not about any legal concerns of the State of Florida." However, as we noted *supra* with regard to the third factor, Florida has an interest in this case because the majority of the transaction between the parties occurred there. It is from Florida that Baird had the monetary payments rescinded, which is of primary concern to plaintiff; and Florida is also where the so-called "war room" to combat the will dispute was set up. Therefore, we are led to conclude that the fourth factor weighs in favor of Baird.

Because three of the four Gestalt factors, by our analysis, weigh in favor of Baird, we conclude that litigation in Rhode Island with regard to this matter would be unreasonable. These three factors indicate to us that litigation in this state would offend traditional notions of fair play and substantial justice. Accordingly, we hold that the trial justice was correct in finding that the Superior Court did not have specific personal jurisdiction over Baird.

# IV

## Conclusion

For the reasons set forth in this opinion, we affirm the January 28, 2017 and June 29, 2018 orders of the Superior Court, and we remand the papers to that tribunal.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

SUPREME COURT – CLERK'S OFFICE

OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Edward F. St. Onge v. USAA Federal Savings Bank et al. |
| **Case Number** | No. 2018-316-Appeal.<br>(PC 16-4227) |
| **Date Opinion Filed** | November 21, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Melissa A. Long |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Edward St. Onge, Pro Se |
| | For Defendants:<br><br>Kristin B. Pettey, Esq.<br>Dana M. Horton, Esq.<br>William M. Daley, Esq. |